F. #2021R00053

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                        Docket No. 21–CR–176 (AMD)

JOHN PENA,
    also known as "Tragedy" and
    "Donn Tragg,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF PRETRIAL DETENTION

                                                          JACQUELYN M. KASULIS
                                                          ACTING UNITED STATES ATTORNEY
                                                           Eastern District of New York
                                                           271 Cadman Plaza East
                                                           Brooklyn, New York 11201

Saritha Komatireddy
Matthew R. Galeotti
Tara McGrath
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The defendant, John Pena, also known as "Tragedy" and "Don Tragg," has been charged by indictment with possessing ammunition after having previously been convicted of a felony. The charged offense arises from the defendant's actions in the early morning hours of March 10, 2021, when he fired more than ten gunshots from close range, killing an individual (the "Victim") at 75 Hill Street in Staten Island, New York. Moreover, the defendant is the boss of Gorilla Stone Mafia ("GSM"), a dangerous street gang with members operating in Staten Island, New York. GSM is a subset of the Untouchable Gorilla Stone Nation ("UGSN"), both of which are factions of the "Bloods," a large national street gang.

As set forth below, the government respectfully submits that the defendant is both a danger to the community and a risk of flight because of, among other things, the violent nature of the charged crimes, the seriousness of the danger posed by the defendant, including the threat posed by the GSM gang, of which the defendant is the boss, the strength of the government's case, the defendant's past failures to comply with prison and parole conditions and the lengthy sentence the defendant faces. Accordingly, the government respectfully requests that the Court enter a permanent order of detention pending trial.

STATEMENT OF FACTS

On March 9, 2021, a memorial was held in the Stapleton area of Staten Island to commemorate the death of Avanti Brock, a former GSM member who was murdered approximately one year earlier. Shortly after the memorial, at approximately 2:03 a.m., a ShotSpotter activation was received at 210 Broad Street, Staten Island, New York. Additional calls for shots fired and a person shot were also received for the front of 75 Hill Street, Staten Island, New York ("75 Hill"), which is in the Stapleton area of Staten Island. Officers from the New York City Police Department ("NYPD") 120 Precinct patrol unit responded to the location and found the Victim, a twenty-six year old male, laying on the ground, between 75 Hill and an adjacent basketball court, unconscious with multiple gunshot wounds. The Victim, a former member of GSM, suffered at least 18 gunshot wounds to his upper torso, right leg, both arms, and both hands and was pronounced deceased at 2:23 a.m.

Law enforcement recovered approximately eleven spent "357 Sig" shell casings, as well as eight fired projectile fragments at the location. An additional two fired projectile fragments were found in the Victim's clothing inside the emergency room. Experts with the Bureau of Alcohol, Tobacco, Firearms and Explosives have determined that the shell casing belonged to .357 ammunition manufactured by L-Tech Enterprises in Kentucky.

On April 1, 2021, a grand jury in the Eastern District of New York returned an indictment charging the defendant with one count of possessing ammunition after having been convicted of a felony. See ECF No. 1. The charged offense carries a statutory maximum sentence of 10 years' imprisonment. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). On

the same day, the Honorable Roanne L. Mann, United States Magistrate Judge for the Eastern District of New York, issued a warrant for the defendant's arrest.

The defendant fled shortly after he committed the murder of the Victim and remained a fugitive for several weeks. By the early morning hours of June 22, 2021, the defendant had returned to Staten Island, where he is believed to have committed yet another murder. That afternoon, the defendant was taken into federal custody on the April 1, 2021 arrest warrant, see ECF No. 2, and his indictment was unsealed. His arraignment is scheduled for this afternoon.

## ARGUMENT

I. Legal Principles

Federal law requires that a defendant must be detained pending trial if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). A finding of dangerousness must be supported by clear and convincing evidence; a finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). In the pretrial context, the government bears the burden of showing that the defendant should be detained. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

Courts consider several factors in making the determination of whether detention is appropriate: (i) the nature and circumstances of the offense charged, including specifically whether the offense involves a firearm; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including his past conduct,

3

criminal history; and (iv) the nature and seriousness of the danger to the community or to an individual in the event of the defendant's release. See 18 U.S.C. § 3142(g). In making this determination, the Court is entitled to rely on evidence presented by proffer. See United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).

II. The Defendant Should Be Detained

The nature and circumstances of the charged offense—murdering a rival by firing more than ten shots at close range in a populated area—as well as his status as the boss of GSM, the strength of the evidence, the history and characteristics of the defendant, and the seriousness of the threat presented by him, all support his detention as a danger to the community. Moreover, the overwhelming evidence of the defendant's guilt, the likelihood that the defendant will serve a substantial sentence (even on the instant charge alone), and the defendant's recent flight from law enforcement, all make his risk of flight abundantly clear. Thus, as set forth below, each factor under Section 3142(g) weighs in favor of detention.

III. The Nature and Circumstances of the Offense

It is self-evident that the defendant, the boss of a violent street gang, poses a danger to the community as he has murdered two people in the course of the last three months. The cavalier and brutal manner in which the defendant recently committed those murders is demonstrative of his utter disregard for human life and evidence his ability to access and use, without hesitation, firearms to kill. Indeed, the Bail Reform Act expressly requires the Court to consider whether the offense involved a firearm in determining whether the nature and circumstances of the offense warrant detention. See 18 U.S.C. § 3142(g)(1). In addition, because the charged offense arises from a murder, the defendant may well

4

receive a sentence at the statutory maximum of 10 years' imprisonment on this charge alone, providing him with a significant incentive to flee and providing the Court with an additional basis for detention.

IV. The Weight of the Evidence

The weight of the government's evidence of the charged offense is strong. It includes, among other things: (i) video recordings from surveillance cameras in the area showing the defendant's face shortly before he is located on separate surveillance footage encountering the Victim; (ii) the testimony of law enforcement officers familiar with the defendant from prior arrests who can identify the shooter in the video recordings as the defendant; (iii) photographs of the defendant from the hours prior to the shooting with a firearm in his belt, wearing clothing similar to clothing that he is seen wearing in the video recordings moments before the shooting; (iv) identification-quality surveillance footage of the defendant just prior to the shooting wearing the same clothes, heading back to 75 Hill Street, where he resides, after the shooting, and leaving shortly thereafter having changed his clothes; (v) an audio recording of the shooting from NYPD audio sensors in the area; (vi) bullet fragments and shell casings recovered from the scene of the shooting; and (vii) expert evidence establishing that the shell casing recovered from the scene of the shooting belonged to ammunition that was manufactured outside of the State of New York.

The defendant cannot credibly claim that he did not possess ammunition that he used to kill the Victim. Therefore, the weight of the evidence weighs heavily in favor of detention.

V.   The History and Characteristics of the Defendant

The defendant's offense conduct follows a long history of violent and criminal behavior. His prior state convictions include the following, among others:

- On June 19, 2013, the defendant was convicted upon a plea of guilty of attempted assault in the second degree, intent to cause injury with a weapon/instrument, a Class E felony.

- On June 18, 2012, the defendant was convicted upon a plea of guilty of attempted robbery in the second degree, a Class D felony.

- On July 1, 2009, the defendant was convicted upon a plea of guilty of assault in the second degree, intent to cause injury with a weapon/instrument, a Class D felony.

- On September 26, 2008, the defendant was convicted upon a plea of guilty of attempted robbery in the second degree, displaying what appeared to be a firearm, a Class D felony.

It is clear that, if released, the defendant poses a serious danger to potential witnesses and the community at large. His dangerousness is made more serious by his status as boss of GSM and the risk of obstruction of justice. There is a serious risk that the defendant, or someone working on his behalf, will attempt to obstruct justice in this case. Although his detention cannot entirely prevent obstruction by the defendant's criminal associates, it will limit the ability of the defendant to direct such conduct or engage in it himself. Finally, the defendant committed the instant offense while on parole, which further demonstrates the defendant's disregard for prison and parole conditions, which undermines

6

any notion that the defendant could be trusted to comply with pretrial release conditions. Therefore, the history and characteristics of the defendant also weigh in favor of detention.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court order the defendant be detained pending trial, as there is no condition or combination of conditions that could reasonably assure the safety of the community or the defendant's appearance at trial.

Dated: Brooklyn, New York
      June 23, 2021